**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JESUS ROMERO, a Minor, by and through his Guardian ad Litem, MERIDA RAMOS; MARCOS ROMERO, a Minor, by and through his Guardian ad Litem, MERIDA RAMOS; and PERLA ROMERO, a Minor, by and through her Guardian ad Litem, MERIDA RAMOS,<br><br>Plaintiff,<br><br>v.<br><br>MACY'S, INC., fka FEDERATED DEPARTMENT STORES, INC., a Delaware corporation; RALPH LAUREN CORPORATION, a Delaware corporation; and DOES 1 through 50, Inclusive,<br><br>Defendant. | CASE NO. 15cv815-GPC(MDD)<br><br>**ORDER GRANTING RALPH LAUREN DEFENDANTS' MOTION FOR DETERMINATION OF GOOD FAITH SETTLEMENT**<br><br>**[Dkt. No. 125.]** |

Defendants Macy's Inc., Macy's West Stores, Inc., and Ralph Lauren Corporation ("Ralph Lauren Defendants") filed a motion for determination of good faith settlement. (Dkt. No. 125.) Schwab Defendants[1] filed an opposition. (Dkt. No. 133.) Ralph Lauren Defendants filed a reply. (Dkt. No. 136.) Plaintiff Jesus Romero filed a response in support of the motion. (Dkt. No. 137.) After a review of the briefs,

---

[1] After the Court granted summary judgment in favor of the individually named Schwab Defendants, the remaining Schwab Defendants are RL Childrenswear Company, LLC; S. Schwab Company, Inc.; Sylvia Company, LLC; Cuny Associates, LLC; and LM Services, LLC.

supporting documentation and the applicable law, the Court GRANTS Ralph Lauren Defendants' motion for determination of good faith settlement.

## Procedural Background

On April 13, 2015, the case was removed from state court. (Dkt. No. 1.) On August 18, 2015, Plaintiff Jesus Romero[2] ("Plaintiff" or "Jesus") filed a first amended complaint against Ralph Lauren Defendants and added the Schwab Defendants. (Dkt. No. 17.) The FAC alleges claims against Ralph Lauren Defendants and Schwab Defendants for severe burns suffered by Plaintiff Jesus Romero, a minor at the time, when a shirt ("Shirt") allegedly purchased at Macy's caught fire after being exposed to a flame. Jesus claims that the Shirt was defective because it was not 100% cotton as stated on the label and the blend of fibers in the Shirt increased the risk of severe injury. Jesus asserts six causes of action against the designer and manufacturer of the shirt, Ralph Lauren Corporation and Schwab Defendants, and the seller, Macy's Inc. and Macy's West Stores, Inc. ("Macy's"), for manufacturing defect, design defect and failure to warn under strict products liability, negligence, breach of warranty and negligent misrepresentation. On September 16, 2015, the Court granted Ralph Lauren Defendants' motion for leave to file a third party complaint. (Dkt. No. 21.) On April 28, 2016, Ralph Lauren Defendants filed a third party complaint for express and equitable indemnification, equitable contribution and declaratory relief against the Schwab Defendants. (Dkt. No. 61.) On May 20, 2016, Schwab Defendants filed an answer to the third party complaint and a counterclaim against Ralph Lauren Defendants for express and equitable indemnification, equitable contribution and declaratory judgment. (Dkt. No. 64.)

On September 13, 2016, the Court denied Ralph Lauren Defendants' motion for summary judgment. (Dkt. No. 94.) On December 6, 2016, the Court granted in part

---

[2] Jesus' siblings, Marcos and Perla Romero, asserted a cause of action for negligent infliction of emotional distress based on a bystander theory. (Dkt. No. 17, FAC.) However, on October 13, 2016, the parties filed a joint motion to dismiss the claims of Marcos and Perla Romero. (Dkt. No. 95.)

and denied in part Schwab Defendants' motion for summary judgment where the Court granted summary judgment as to the individually named Defendants. (Dkt. No. 99.)

On January 13, 2017, Ralph Lauren Defendants filed a motion for determination of good faith settlement. (Dkt. No. 101.) However, after being fully briefed, the Court denied Ralph Lauren Defendants motion on February 22, 2017. (Dkt. No. 112.) In that order, the Court denied the request because Ralph Lauren Defendants failed to establish the noncash element of the settlement by assessing the monetary value of the assignment of Ralph Lauren Defendants' indemnification and contribution rights in their third party complaint to Plaintiff. (Id. at 9-10.) On May 1, 2017, Ralph Lauren Defendants filed the instant motion for determination of good faith settlement which is currently fully briefed.[3]

## Factual Background[4]

On January 30, 2005, Jesus' family was planning to go to Mexico, and Jesus, who was 7 years old, and his brother Marcos, who was 6 years old, went outside while the family was getting ready. Before Jesus and his brother went outside, Jesus was dressed wearing a boy's short-sleeved Ralph Lauren red and white gingham button-down dress shirt. Jesus' mother, Merida, purchased the shirt worn by Jesus at Macy's in Chula Vista, CA, and she testified the label said 100% cotton. Merida always bought 100% cotton clothing for her children because it was the way her mother used to dress her and because it was the most comfortable fabric.

On that day, Marcus had a lighter and the boys wanted to burn something. The boys went outside to the front of their neighbor's house where there were flowers.

---

[3] In opposition, Schwab Defendants argue that the settling parties must produce their written settlement agreement in order to allow Schwab Defendants to contest the good faith motion. In reply, Ralph Lauren Defendants attaches a copy of the settlement agreement. In their opposition, Schwab Defendants asked that in the event that Ralph Lauren Defendants provide a copy of the written settlement agreement, they ask that they be given an opportunity to brief any new legal or factual issues arising from the disclosure of the settlement agreement. (Dkt. No. 133 at 14.) However, to date, they have not sought leave to file an additional brief.

[4] The facts are taken from the Court's previous orders on Schwab Defendants and Ralph Lauren Defendants' motions for summary judgment.

Jesus and his brother were sitting down and Marcos lit up a flower or weed while Jesus was holding it. Jesus' finger got so hot that he dropped the flower or weed and it landed in the stomach area on his shirt. Jesus told his brother to go get help so Marcos ran into the house to get their father, who came out and ripped the shirt off Jesus and stepped on it to get the flames out. Jesus suffered from severe burns covering about 25% of his body. (Dkt. No. 17, FAC ¶ 27.)

Merida testified she purchased the shirt worn by Jesus at Macy's in July or August 2004. RL Childrenswear held a license from Polo Ralph Lauren to manufacture and sell Ralph Lauren brand boys products, including boys' woven shirts such as the woven gingham style shirt that Jesus wore on the day of the incident. On May 25, 2004, a few months prior to Merida purchasing the Shirt, Ralph Lauren entered into an Asset Purchase Agreement with RL Childrenswear to reacquire its licenses back. While the Asset Purchase Agreement was dated May 25, 2004, it had a closing date of July 2, 2004. At closing, the transition inventory already manufactured by Schwab Defendants including work in progress at factories overseas, remained to be shipped to department stores such as Macy's, and there were also products that were already sitting on shelves in retail stores.

## Discussion

Under California law, "[w]here a release . . . is given in good faith before . . . judgment to one or more of a number of tortfeasors claimed to be liable for the same tort, or to one or more other co-obligors mutually subject to contribution rights," the release shall "reduce the claims against the others in the amount stipulated by the release" and "discharge the party to whom it is given from all liability for any contribution to any other parties." Cal. Code Civ. P. § 877(a) & (b). To obtain a determination that it reached a settlement in good faith, "a settling party may give notice of settlement to all parties and to the court, together with an application for determination of good faith settlement." Cal. Code Civ. P. § 877.6(a)(2). The settling defendant bears the initial burden to demonstrate there has been a settlement. Fisher v.

Superior Ct., 103 Cal. App. 3d 434, 448 (1980). Nonsettling parties are thereafter given an opportunity to contest the settlement. Id.

The provisions of sections 877 and 877.6 reflect two major policy goals: "the equitable sharing of costs among the parties at fault and the encouragement of settlements." Abbott Ford, Inc. v. Superior Ct., 43 Cal. 3d 858, 871-72 (1987). A good faith settlement not only releases the settling defendant from liability for contribution or comparative indemnity,[5] but also reduces the plaintiff's claims against the nonsettling defendants. Id. "In order to encourage settlement, it is quite proper for a settling defendant to pay less than his proportionate share of the anticipated damages. What is required is simply that the settlement not be grossly disproportionate to the settlor's fair share." Id. at 874-75. Further, a "plaintiff's claims for damages are not determinative in finding good faith; rather, the court is called upon to make a 'rough approximation' of what the plaintiff would actually recover." West v. Superior Ct., 27 Cal. App. 4th 1625, 1636 (1994) (internal citation omitted).

If the court determines the settlement was entered in good faith, "any other joint tortfeasor or co-obligor" is barred "from any further claims against the settling tortfeasor or co-obligor for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault." Id. § 877.6(c); Tech-Bilt, Inc. v. Woodward-Clyde & Assocs., 38 Cal. 3d 488, 494 (1985).

In determining a good faith settlement, a court must consider the following factors: (1) "a rough approximation of the plaintiffs' total recovery and a settlor's proportionate liability"; (2) "the amount paid in settlement"; (3) "a recognition that a settlor should pay less in settlement than if found liable after a trial"; (4) "the allocation of settlement proceeds among plaintiffs"; (5) "the financial conditions and insurance

---

[5]While a good faith settlement releases Ralph Lauren Defendants from liability for contribution or comparative indemnity from Plaintiff, it does not extinguish the indemnity claim by Schwab Defendants, asserted in their counterclaim against Ralph Lauren Defendants, in the event Plaintiff proves the Shirt was defective but does not prove the shirt was manufactured by Schwab Defendants. See Bay Dev., Ltd. v. Superior Ct. of San Diego Cnty., 50 Cal. 3d 1012, 1029-32 (1990).

policy limits of settling defendants"; and (6) evidence of "collusion, fraud, or tortious conduct aimed to injure the interests of nonsettling defendants." Id. at 499. An opposing party must "demonstrate . . . that the settlement is so far 'out of the ballpark' in relation to these factors as to be inconsistent with the equitable objectives of the statute." Id. at 499-500. An evaluation of the factors are to be made on the information available at the time of settlement. Id. at 499. The court has discretion in determining whether a settlement is made in good faith. Id. at 502.

Where the settlement payment is contingent or is based on value other than cash, the settling party has the burden to establish its monetary value. Arbuthnot v. Relocation Realty Serv. Corp., 227 Cal. App. 3d 682, 689 (1991); Brehm Comms. v. Superior Court, 88 Cal. App. 4th 730, 735-36 (2001) (quoting Weil and Brown, California Practice Guide: Civil Procedure Before Trial (The Rutter Group 2000) ("[w]here something other than immediate cash is paid, the settling parties must establish the value of the settlement. Without this information, the court cannot determine whether the settlement is within the 'ballpark' of the settling defendant's proportionate liability; nor the amount of setoff to which the nonsettling defendants are entitled.")). Under section 877.6, the moving party must set forth the value of the consideration paid and an evidentiary basis for that valuation, and must demonstrate that the valuation "was reached in a sufficiently adversarial manner to justify the presumption that a reasonable valuation was reached." Franklin Mint Co. v. Superior Ct., 130 Cal. App. 4th 1550, 1558 (2005). "It is well settled that an assignment of indemnity rights may constitute valuable noncash consideration for settlement." Regan Roofing Co. v. Superior Ct., 21 Cal. App. 4th 1685, 1711 (1994) (citation omitted); Erreca's v. Superior Ct., 19 Cal. App. 4th 1475, 1496 (1993). "The value of such assigned rights may be determined at the time of settlement by declaration or by expert testimony." Regan Roofing Co., 21 Cal. App. 4th at 1711. Once the value of the assigned right is presented, a nonsettling defendant can "(1) can accept that value and attempt to show that the settlement is not in good faith because the assigned value is not

within the settling defendant's Tech–Bilt ballpark, or (2) can attempt to prove that the parties' assigned value is too low and that a greater reduction in plaintiff's claims against the remaining defendants is actually warranted." United Servs. Auto Ass'n v. Superior Ct., 93 Cal. App. 4th 633, 642 (2001) (quoting Abbott Ford, Inc. v. Superior Ct., 43 Cal. 3d 858, 879 (1987)).

**A.     Amount Paid in Settlement**

Under the terms of the settlement, Ralph Lauren Defendants "have agreed to pay Plaintiff the sum of $300,000 and to assign to Plaintiff any and all of their indemnification and contribution rights, whether contractual or equitable, against the Schwab Defendants, as outlined and alleged in the Ralph Lauren Defendants' Third Party Complaint; and Jesus Romero has agreed to release all claims and dismiss this action against the Ralph Lauren Defendants, with prejudice." (Dkt. No. 125-2, Kawabata Decl. ¶ 9.)

The indemnification and contribution rights are based on the provisions in the Asset Purchase Agreement between Schwab Defendants and Ralph Lauren Defendants which provides for indemnification of Ralph Lauren Defendants in the event of a products liability claim where Schwab Defendants are liable. (Dkt. No. 125-2, Kawabata Decl. ¶ 11.) When Ralph Lauren Defendants tendered the claim to Schwab Defendants, they denied it. Ralph Lauren Defendants claim that the value of the assigned indemnity claim is potentially $562,657.59 which consists of $300,000 paid by Ralph Lauren Defendants in settlement; $162,657.59 in attorney's fees and costs incurred by the Ralph Lauren Defendants from the date of tender, July 30, 2015, to the present; and estimated $100,000 in additional fees and costs to be incurred by Ralph Lauren Defendants to defend the case through the end of trial. (Dkt. No. 125-1 at 10; Dkt. No. 125-2, Kawabata Decl. ¶ 12.) Moreover, Schwab Defendants have indicated they are covered by a one million dollar policy on this claim so Plaintiff can recover the full amount of the assigned claim if he prevails. (Dkt. No. 125-2, Kawabata Decl. ¶ 13.) Schwab Defendants do not dispute the value Ralph Lauren Defendants has placed on

the indemnification and contribution rights. In sum, the monetary value of the settlement totals around $862,000.

## B. Approximation of Plaintiff's Potential Recovery and Settling Defendants' Proportionate Liability

To meet the standard of "good faith," the amount of the settlement must be "within the reasonable range of the settling tortfeasor's proportional share of comparative liability for the plaintiff's injuries." Tech-Bilt, 38 Cal. 3d at 499; see also Torres v. Union Pac. R. Co., 157 Cal. App.3d 499, 509 (1984) (holding that "a co-defendant's settlement price cannot be grossly disproportionate to his fair share of the damages"). A "settlement figure must not be grossly disproportionate to what a reasonable person, at the time of the settlement, would estimate the . . . liability to be." Torres, 157 Cal. App. 3d at 509.

### 1. Approximation of Plaintiff's Potential Recovery

Recently, as part of preparing for the final pretrial conference, Plaintiff's counsel represented that Plaintiff's total recoverable economic medical expenses, after adjustments, are about $28,259.56. (Dkt. No. 125-2, Kawabata Decl. ¶ 11.) As to non-economic damages, Plaintiff has never articulated a specific amount sought; however, Ralph Lauren Defendants contend that amount will not be substantial based on the fact that Jesus has recovered well physically and psychologically, as revealed in deposition testimonies. Lastly, Ralph Lauren Defendants argue there is no evidence of malice, fraud or oppression by Ralph Lauren Defendants or the Schwab Defendants to warrant an award of punitive damages. (Id. ¶ 19.)

Schwab Defendants claim that Plaintiff is also seeking past and future medical expenses which is estimated at around $144,800 as indicated by Plaintiff's retained plastic surgeon and defense expert's recommendation. (Dkt. No. 109-1, Walshok Decl., Exs. E & F.) As to non-economic and punitive damages, Schwab Defendants argue that after a review of jury verdicts and settlements in these types of cases, these damages comprise the majority of the awards given to prevailing plaintiffs and Plaintiff's counsel

will undoubtedly ask the jury to award non-economic damages in the mid-seven-figure to eight-figure range which are consistent with other favorable jury awards in trial involving serious burn injuries suffered by a minor. (Id. ¶¶ 10, 11.) Therefore, they contend that $300,000 is grossly disproportionate to what could be considered to be Plaintiff's potential recovery.

Ralph Lauren Defendants argue that despite the claim of future medical expenses of $144,800, at trial, Schwab Defendants will argue there is little evidence for the necessity of future care based on their medical psychiatric expert Dr. Mark Kalish. However, Ralph Lauren Defendants reply that even accepting Schwab Defendants' evidence that the cost of future treatment is $144,800, the total value of the settlement of $860,000 far exceeds the economic damages.

The court makes a "rough approximation of what plaintiff would actually recover." West, 27 Cal. App. 4th at 1636 (citing Tech–Bilt, 38 Cal. 3d at 499). Plaintiff's claim for damages are not determinative. Id. "[A] 'good faith' settlement does not call for perfect or even nearly perfect apportionment of liability." N. Cnty. Contractor's Ass'n v. Touchstone Ins. Servs., 27 Cal. App. 4th 1085, 1091 (1994) (citation omitted). Ultimately, the court is to determine whether the "settlement is grossly disproportionate to what a reasonable person at the time of settlement would estimate the settlor's liability to be." City of Grand Terrace v. Superior Ct., 192 Cal. App. 3d 1251, 1262 (1987).

The deposition transcripts provided by Ralph Lauren Defendants in their motion raise questions concerning Plaintiff's potential recovery for non-economic damages in the mid-seven-figure to eight-figure range of an award. Dr. Mark Kalish, Schwab Defendants' psychiatric expert, reviewed Plaintiff's medical records and testified that at the initial visit, there was no noticeable psychological difficulties, that Plaintiff initially was withdrawn, dysthymic and reluctant to verbalize, but he started making progress three months after the incident. (Dkt. No. 125-2 Kawabata, Decl., Ex. E,

Kalish Depo. at 28-29.)[6] He exhibited anxiety from February 2005 to 2007, (id. at 32), and had concern or embarrassment about his scars but then he was making good progress. (Id. at 32-33.) In filling out the "Staying Healthy" Assessment, in 2010, 2011, 2012, and 2013, Plaintiff indicated he exercised or played active sports five days a week and he does not feel sad or down. (Id. at 32-34, 36.) In 2013, at age 16, Plaintiff felt self-conscious about his extensive scar which affected his social functioning. (Id. at 35.) In 2014, a suicide screening was conducted and revealed no evidence of severe depression. (Id. at 37-38.)

Dr. Kevin Border, Plaintiff's treating plastic surgeon, testified that Plaintiff has full range of motion and no deficit in strength and did not complain of pain. (Id., Ex. F, Border Depo. at 22-25.) He noted that Plaintiff has "mild banding" on his right armpit region, and mild hypertrophic (firm and raised) scarring on his chest. (Id. at 24.)

Plaintiff testified that he is set to graduate high school, and plans to go to trade school to be an electrician. (Id., Ex. G, Jesus Depo. at 269-70.) He also noted that sometimes when he bends and tries to pick something up that is heavy, his scar starts to hurt or if he has his arm up, it starts to cramp after awhile which makes it harder to move it. (Id. at 236.) He described the sensation as if the scar was being pulled and getting tight and is a sharp pain. (Id. at 237.) Once he drops the item, he stretches. (Id. at 237-38.) These episodes last about a minute. (Id.)

Plaintiff's mother, Merida, stated that Plaintiff is on track to graduate, works at a shoe store, plays soccer with friends and has had girlfriends. (Id., Ex. H, Merida Depo. at 160-64.) She testified that Jesus has told her he does not like to look at himself in the mirror and sometimes when he raises his arm too high to grab a shoe, it hurts, and sometimes when it is very hot outside, his body heats up a lot. (Id.)

These depositions demonstrating improvement in Plaintiff's psychological and physical conditions after the incident raise questions whether Plaintiff will recover the

---

[6]The Court notes that while Ralph Lauren Defendants cite to pages 44-46 of Kalish's deposition testimony, those pages were not filed with the Court.

full amount of non-economic damages he intends to seek.

To rebut Ralph Lauren Defendants' assessment of non-economic and punitive damages, Schwab Defendants' argument on the "rough approximation of the plaintiffs' total recovery" focuses on what Plaintiff will seek to recover; however, the question on this factor is what a plaintiff would actually recover and not what Plaintiff claims as damages. See West, 27 Cal. App. 4th at 1636. Moreover, Schwab Defendants' assertion that Plaintiff will seek an award of non-economic damages in the seven to eight figure range consistent with other favorable jury awards is not supported by any caselaw. Taking into consideration that Schwab Defendants' liability is potentially greater than Ralph Lauren Defendants, as discussed below, the Court concludes that the settlement amount of about $860,000 is not "grossly disproportionate to what a reasonable person at the time of settlement would estimate the settlor's liability to be."[7] Id.

2. **Settling Defendants' Proportionate Liability**

In the prior order denying Ralph Lauren Defendants' motion for good faith settlement, the Court concluded that "[t]here is a reasonable inference that the Shirt that was purchased by Jesus' mother in July/August 2004 was manufactured by Schwab Defendants as part of their existing or work in progress inventory. Based on the evidence at the time of settlement, it is reasonable to conclude that Ralph Lauren Defendants' liability is significantly less than Schwab Defendants' liability." (Dkt. No. 112 at 9.) In this motion, the parties have not presented any additional facts to alter the Court's prior analysis.

---

[7] In Plaintiff's response in support of Ralph Lauren Defendants' motion, he argues that the settlement is proportional to their fair share of liability as it recognizes their status as more passive actors in creating the product that harmed Plaintiff. (Dkt. No. 137 at 2.) Plaintiff also points out that the settlement amount is reasonable if one considers the nominal settlement offers by Schwab Defendants under California Code of Civil Procedure section 998. On July 20, 2016, Schwab Defendants made a compromise offer of $1.00, then on December 2, 2016, they made another compromise offer of $10,000.01, and finally on January 26, 2017,they served an offer under Rule 68 allowing entry of judgment against them for "$10,0001 (sic)." (Dkt. No. 137 at 4-5.)

In the Court's prior order, it explained that substantial evidence supports a reasonable inference that Ralph Lauren was not the manufacturer of the Shirt. (Dkt. No. 112 at 8.) The deposition transcripts note that Ralph Lauren had the ultimate say as to design, theme and styling of the product; but as to the components such as the sourcing or the fabrics, RL Childrenswear made those decisions (Dkt. No. 111-1, Kawabata Decl, Ex. A, Tadd Schwab Depo. at 187:11-188:4; Dkt. No. 109-5, Walshok Decl., Ex. D, Hrdina Depo. at 24:2-20.) Samuel Schwab explained that Polo Ralph Lauren made the final decision under the terms of the license and had the final approval process. (Dkt. No. 109-5, Walshok Decl., Ex. D, Samuel Schwab Depo. at 28:13-18.) Ralph Lauren had the authority to look at every style going into the line and if they did not like what they saw, they would ask RL Childrenwear to change it. (Id. at 29:23-30:7.)

At the time of closing of the Asset Purchase Agreement, there was still work in progress being manufactured, there were products that were being shipped from factories to the United States, and there were products that were already sitting on shelves in retail stores. (Dkt. No. 111-1, Kawabata Decl., Ex. B, Hrdina Depo at 88:13-89:23.) It would generally take about 12-18 months for an item to make its way from development to placement on a retailer's shelf for sale to the public. (Dkt. No. 111-1, Kawabata Decl., Ex. C, Sam Schwab Depo at 88:5-89:12; id., Ex. D, Marsicano Depo. at 53:25-55:22.) Therefore, Court comes to the same conclusion that based evidence at the time of settlement, "it is reasonable to conclude that Ralph Lauren Defendants' liability is significantly less than Schwab Defendants' liability." (Dkt. No. 112 at 9.)

**C.     Financial Conditions and Insurance Policy Limits of Settling Defendants**

Schwab Defendant argue that Ralph Lauren Defendants have not made a showing of financial inability to contribute more to the settlement and the proposed settlement does not constitute an amount even close to Ralph Lauren Defendants' insurance limits and the proposed settlement is grossly disproportionate to their ability to pay.

Macy's, Inc. and Macy's West Stores, Inc. are self-insured and have assets

substantially in excess of Plaintiff's claims and Ralph Lauren Corporation has assets substantially in excess of Plaintiff's claims and carried a general liability policy of $1,000,000 that provide coverage to both Ralph Lauren and the Macy's entities. (Dkt. No. 125-2, Kawabata Decl. ¶ 25.)

Schwab Defendants misconstrue this factor arguing that since they have a higher insurance limit and its entities are worth an amount substantially in excess of the proposed settlement amount, they should pay more in the settlement. The fact that Ralph Lauren Defendants have the ability to pay a larger amount must be balanced against the facts of the case and the degree that they are liable, and not based on their financial ability to pay. See e.g., Perez v. Ford Motor Co., No. 10cv2213-LJO-SKO, 2012 WL 1119782, at *4 (E.D. Cal. Apr. 3, 2012) (because parties agreed to a settlement through a mediator, that indicated defendant's ability to pay a larger amount had been balanced against the facts of the case and the degree to which the defendant is liable.)

**D.     Remaining Factors**

In this case, there is only one Plaintiff and all settlement proceeds will go to the plaintiff, Jesus Romero. The parties do not raise an issue whether there has been any evidence of collusion, fraud or tortious conduct aimed at injuring Schwab Defendants' interests. Lastly, Ralph Lauren Defendants should pay less than if they were found liable at trial recognizing that a settlor should pay less in settlement than if found liable after a trial.

In evaluating the Tech-Bilt factors, Schwab Defendants have not demonstrated that the settlement is so far "out of the ballpark" to justify denial of the motion for good faith settlement. Thus, the Court GRANTS Ralph Lauren Defendants' motion for determination of good faith settlement.

**Conclusion**

Based on the above, the Court GRANTS Ralph Lauren Defendants' motion for determination of good faith settlement. The hearing set for July 14, 2017 shall be

**vacated.**

IT IS SO ORDERED.

Dated: June 28, 2017

Hon. Gonzalo P. Curiel
United States District Judge