# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESUS ROMERO,<br><br>    Plaintiff,<br><br>v.<br><br>S. SCHWAB COMPANY, INC.; RL CHILDRENSWEAR COMPANY, LLC; SYLVIA COMPANY, LLC; CUNY ASSOCIATES, LLC; AND LM SERVICES LLC.<br><br>    Defendants. | Case No. 15-CV-815-GPC-MDD<br><br>**ORDER DENYING THIRD PARTY DEFENDANTS' MOTION FOR RECONSIDERATION**<br><br>**[Dkt. No. 328.]** |

Before the Court is Third Party Defendants' motion for reconsideration of the Court's order on Plaintiff's Findings of Fact and Conclusions of Law on Express Indemnification Cause of Action in the Third Party Complaint, (Dkt. No. 322). (Dkt. No. 328.) Plaintiff filed an opposition and Third Party Defendants filed a reply. (Dkt. Nos. 329, 330.) Based on the reasoning below, the Court DENIES Third Party Defendants' motion for reconsideration.

1

## Background[1]

Plaintiff Jesus Romero ("Plaintiff") filed the operative first amended complaint ("FAC") against Defendants Macy's Inc.; Macy's West Stores, Inc.; and Ralph Lauren Corporation's ("Ralph Lauren Defendants") as well as Childrenswear Company, LLC; S. Schwab Company, Inc.; Sylvia Company, LLC; Cuny Associates, LLC; LM Services, LLC; Samuel Schwab; Douglas Schwab; Tadd Schwab; and Amy Owens (collectively the "Schwab Defendants") alleging claims for severe burns suffered by Plaintiff, a minor at the time, when a shirt ("Shirt") allegedly purchased at Macy's caught fire after being exposed to a flame. (Dkt. No. 17.) The FAC asserted causes of action for strict products liability–manufacturing defect, design defect and failure to warn, negligence, breach of warranty, negligent misrepresentation and negligent infliction of emotional distress. (Id.)

On April 28, 2016, the Ralph Lauren Defendants filed a third-party complaint against the Schwab Defendants ("Third Party Defendants" or "Schwab Defendants") for express indemnification, equitable indemnification, equitable contribution and declaratory relief. (Dkt. No. 61.) The cause of action for express indemnification was asserted on behalf of Ralph Lauren Corporation only. (Id. at 3.) On May 20, 2016, the Schwab Defendants filed an answer to the third-party complaint and brought a counterclaim against the Ralph Lauren Defendants for express indemnification, equitable indemnification, equitable contribution and declaratory relief. (Dkt. No. 64.)

On January 1, 2000, PRL USA, Inc. and Polo/Lauren Company, L.P., the licensors, entered into a License Agreement with RL Childrenswear LLC, licensee, granting it the exclusive right to manufacture, promote and sell apparel under the Polo/Ralph Lauren trademarks. (Dkt. No. 318-1, Irving Decl., Ex. A.) The License Agreement also included a design services agreement with Ralph Lauren's design

---

[1] The background is taken from the Court's order on Plaintiff's Findings of Fact and Conclusions of Law on Express Indemnification Cause of Action in the Third Party Complaint. (Dkt. No. 322.)

company, Polo Ralph Lauren Corporation ("RLC"). (Id. at ¶¶ 3.1-3.3.)

On May 25, 2004, RL Childrenswear, and the Seller Affiliate Group, identified as the Sellers, and RLC, the Buyer, entered into Asset Purchase Agreement ("APA") related to the License Agreement dated January 1, 2000. (Dkt. No. 316-4, Weitz Decl., Ex. 12, APA.) The Seller Affiliate Group includes Defendants Sylvia Company, LLC, CUNY Associates, LLC, LM Services LLC, S. Schwab Company, Samuel Schwab, Douglas Schwab, Tadd Schwab and Amy Owens. (Id. at 19.) The Asset Purchase Agreement closed, and business transferred to RLC on July 2, 2004. (Dkt. No. 316-5, Weitz Decl., Ex. 13; id., Ex. 21, S. Schwab Depo. at 44:14-15.)

Article X of the APA contains an indemnification provision that provides,

> Obligation of the Seller and the Seller Affiliate Group to Indemnify. Subject to the limitations contained in Section 10.5, the Seller and the Seller Affiliate Group (collectively, the "**Seller Indemnifying Parties**", jointly and severally, agree to indemnify, defend and hold harmless the Buyer (and any of its officers, directors, employees, stockholders, Affiliates, successors and assigns) (the "**Buyer Indemnified Parties**") from and against any losses, claims, liabilities, damages, judgments, assessments, fines, costs, expenses or deficiencies (including reasonable fees, expenses and disbursements of attorneys, experts, personnel and consultants incurred by the party entitled to indemnification under this Article X), whether or not involving Litigation by a third party, (collectively, "**Losses**") based upon, arising out of, due to or otherwise in respect of:. . . .

(Dkt. No. 316-4, Weitz Decl., Ex. 12, APA ¶ 10.1.)

Plaintiff filed a complaint on February 26, 2015 in state court which was removed to this Court on April 13, 2015. (Dkt. No. 1, Not. of Removal.) On July 30, 2015, Ralph Lauren Defendants tendered their defense to Schwab Defendants pursuant to Article X. (Dkt. No. 316-20, Kawabata Decl., Ex. 1.) On December 21, 2015, Schwab Defendants' insurer declined to defend RLC and Macy's asserting that it did not manufacture the Shirt and was not obligated to indemnify Ralph Lauren

Defendants. (Dkt. No. 316-21, Kawabata Decl., Ex. 2; Dkt. No. 316-22, Kawabata Decl., Ex. 3; Dkt. No. 316-23, Kawabata Decl., Ex. 4.)

On December 23, 2016, Plaintiff and Ralph Lauren Defendants entered into a Settlement Agreement. (Dkt. No. 316-25, Kawabata Decl., Ex. 6.) In exchange for a full release and dismissal with prejudice of all claims, the Ralph Lauren Defendants paid Plaintiff $300,000 and assigned any indemnity and contribution rights they had against Schwab Defendants as alleged in Ralph Lauren Defendants' third party complaint and the APA. (Id.)

In his opposition, Plaintiff presents the declaration of Ralph Lauren Defendants' attorney, Kenneth Kawabata, who was involved in the litigation from the beginning. (Dkt. No. 329-4, Szeto Decl., Ex. 3, Kawabata Decl.) He states that he was assigned by CNA Insurance Company ("CNA") to serve as the insurer-appointed counsel for Ralph Lauren Defendants in the litigation. (Id. ¶ 2.) He represented Ralph Lauren Defendants and their insurer, CNA. (Id.) He notes that CNA is identified as a releasee in the SA. (Id. ¶ 3.)

According to Ralph Lauren Defendants' attorney, at the time of settlement, the parties understood that CNA would fund the settlement and that the settlement included assigning any and all indemnification and contribution rights to Plaintiff so that Plaintiff could seek recovery of all defense costs of Ralph Lauren Defendants in the litigation whether paid by Ralph Lauren Defendants or by CNA on their behalf. (Id. ¶ 4.) Therefore, CNA did not expressly reserve any subrogation rights in light of the assignment and transfer of rights to Plaintiff. (Id.)

On June 28, 2017, the Court granted Ralph Lauren Defendants' motion for determination of good faith settlement. (Dkt. No. 138.) On September 9, 2017, the Court granted Plaintiff and Ralph Lauren Defendants' joint motion to dismiss with prejudice. (Dkt. No. 145.)

Prior to trial, the parties agreed to submit, if necessary, the question on the contractual indemnification claim to the Court. (Dkt. No. 228.) After the case was

presented to the jury on the causes of action of strict products liability for manufacturing defect and design defect, negligence and breach of express warranty, the jury returned a special verdict that Schwab Defendants manufactured the shirt but found no liability on any of the causes of action. (Dkt. No. 304.)

After briefing by the parties, the Court issued a ruling on Plaintiff's Findings of Fact and Conclusions of Law and concluded that pursuant the Settlement Agreement, Plaintiff, as assignee to RLC's contractual indemnification rights against Schwab Defendants alleged in the Third Party Complaint, is entitled to $478,028.40 which represents the Losses RLC incurred under the APA. (Dkt. No. 322 at 10.)

Third Party Defendants move for reconsideration of the Court's order on the narrow issue of whether Plaintiff, as assignee of RLC's express indemnity claim, can recover settlement and defense costs that were paid entirely by CNA, RLC's insurer. Defendants argue he cannot while Plaintiff contends he can. Schwab Defendants do not deny they are obligated to indemnify $478,028.40 under the APA but dispute who is entitled to the indemnification. (Dkt. No. 330 at 2.)

**Discussion**

**A. Legal Standard on Motion for Reconsideration**

Defendant moves for reconsideration under Federal Rule of Civil Procedure ("Rule") 54(b), 59(e), 50(b) and Civil Local Rule 7.1.i based on the court's inherent authority to modify, alter or revoke a non-final order. Rule 54(b) provides that an interlocutory order "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b).

Reconsideration of interlocutory orders under Rule 54 is an "inherent" power of the court. City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper, 254 F.3d 882, 888 (9th Cir. 2001); Smith v. Massachusetts, 543 U.S. 462, 475 (2005) ("[a] district court has the inherent power to reconsider and modify its interlocutory orders prior to the entry of judgment[.]") (Ginsburg, J., dissenting on other grounds).

5

For purposes of reconsideration under Rule 54, district courts look to the standard on motions for reconsideration under Rule 59 and Rule 60(b). See Hansen v. Schubert, 459 F. Supp. 2d 973, 998 n.5 (E.D. Cal. 2006) ("While the standards applicable to motions for reconsideration of final judgments or orders under Rules 59(e) (final judgments) and 60(b) (final judgments and orders) technically do not delimit the court's inherent discretion to reconsider interlocutory orders, the court nonetheless finds them to be helpful guides to the exercise its discretion."); Cincinnati Ins. Co. v. Harry Johnson Plumbing & Excavating Co., Inc., Case No. 16cv5090-LRS, 2017 WL 5639944, at *1 (E.D. Wash. Oct. 23, 1997) ("As neither Rule 54(b) or this court's Local Rules provide a standard, typically, district courts will apply standards substantially similar to those used under Rule 59(e) and 60(b).").

"A district court may properly reconsider its decision if it '(1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law.'" Smith v. Clark Cnty. Sch. Dist., 727 F.3d 950, 955 (9th Cir. 2013) (quoting Sch. Dist. No. 1J v. ACandS, Inc., 5 F.3d 1255, 1263 (9 Cir. 1993)). A court commits clear error when "the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been committed." Id. (quoting United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948)).

In addition, Local Civil Rule 7.1(i)(1) provides that a motion for reconsideration must include an affidavit or certified statement of a party or attorney "setting forth the material facts and circumstances surrounding each prior application, including inter alia: (1) when and to what judge the application was made, (2) what ruling or decision or order was made thereon, and (3) what new and different facts and circumstances are claimed to exist which did not exist, or were not shown upon such prior application." S.D. Local Civ. R. 7.1(i)(1).

/ / / /

/ / / /

**B       Discussion**

Schwab Defendants move to reconsider contending the Court committed clear error when it ruled that Plaintiff, as assignee to RLC's express indemnity claim, was entitled to recover Losses not incurred by RLC but were instead paid by its insurer, CNA. Plaintiff opposes arguing the Court's application of New York authorities in its order are directly relevant to this case.

First, Schwab Defendants appear to question the Court's authority to conduct independent research in coming to its ruling by repeatedly asserting that the Court cited to other New York cases that were neither cited by Schwab Defendants or by Plaintiff. (Dkt. No. 328 at 7, 13; Dkt. No. 330 at 4.)

"Although our common law system relies heavily on advocacy by the parties, judges are free to undertake independent legal research beyond the parties' submissions. It is no revelation that courts look to cases, statutes, regulations, treatises, scholarly articles, legislative history, treaties and other legal materials in figuring out what the law is and resolving legal issues." De Fontbrune v. Wofsky, 838 F.3d 992, 999 (9th Cir. 2016). Defendant's implication that the Court's citation to cases not cited to by the parties is error is without merit. The Court was not required to merely rely on Defendant's single New York appeals court case, Cardo v. Bd. of Managers, Jefferson Village Condo 3, 67 A.D. 3d 945, 946 (2009).[2] Cardo was not directly on point factually and further research was required.

In the prior order, the Court ruled that Plaintiff, as the assignee of RLC's express indemnity claim against Schwab Defendants, could recover RLC's Losses to include $178,028.40 in attorneys' fees and costs, and the $300,000 settlement payment even though RLC's liability insurer, CNA, paid for the Losses. (Dkt. No. 322 at 7-9.) The Court relied on New York cases that held that it was proper to award attorney's fees even if those fees were already paid by the party's insurer in order to

---

[2] While Defendants included a block citation from the discussion in Cardo that includes citations to three other New York cases, those cases were not discussed by Defendants.

7

"avoid a windfall for the losing party, freeing it from having to pay the attorney's fees that it was contractually obliged to pay." U.S. Bank Nat'l Ass'n v. Dexia Real Estate Capital Markets, 12cv9412 (PAE), 2016 WL 6996176, at *7 (S.D.N.Y. Nov. 30, 2016); see also Centennial Contractors Enters. v. East N.Y. Renovation Corp., 79 A.D. 3d 690, 693 (N.Y. App. Div. 2010) (trial court did not err in awarding the plaintiff's an award as well as attorney's fees based on a contractual indemnification provision). In Centennial Contractors, even though the parties did not challenge whether the plaintiff was entitled to the attorney's fees where its insurer paid those amounts, the appellate court noted the fact that the plaintiff's insurer paid the attorney's fees. 79 A.D. 3d at 691.

In their motion for reconsideration, Defendants cite to Pennsylvania Gen. Ins. Co., v. Austin Powder Co., 502 N.E. 2d 982 (N.Y. 1986). Pennsylvania Gen. Ins. Co. primarily stands for the proposition that there is a rule barring an insurer's subrogation claims against its own insured for a claim arising from the very risk for which the insured was covered, id. at 985, which is not applicable in this case. Relevant to this case, the court also considered whether an insured could seek indemnification when its insurer had already paid on the underlying property claim. Id. at 984.

In the case, Austin Powder rented a truck from Bison Ford and under the rental contract Bison Ford agreed to provide primary insurance coverage for the truck and Austin Powder agreed to indemnity Bison Ford for any liability arising out of the use of the vehicle. Id. at 983. While the vehicle was being used by one of Austin Powder's employee to carry dynamite and blasting caps to a quarry site, the truck exploded causing extensive property damage. Id. at 983-84. Bison Ford's insurance carrier, Liberty Mutual, settled the underlying property claim. Id. at 984. Bison Ford then filed a claim for indemnification against Austin Powder. Id. On this issue, the high court noted that Bison Ford had no indemnification claim against Austin Powder because it had not and would not sustain any out-of-pocket losses. Id. at 984-85. It then noted that "to the extent Bison Ford is seeking indemnification, its cross claim

must be regarded as one asserted on behalf of the insurer, the real party in interest here." Id. at 985. In a footnote, the court cited to CPLR 1004 allowing an insurer's subrogation claim to be pursued in the insured's name where the insured has "executed to his insurer either a loan or subrogation receipt, trust agreement, or other similar agreement." Id. at 985 n. 3. "The insurance policy issued to Bison Ford by Liberty Mutual expressly provides that the insured on whose behalf a payment is made 'must transfer' any rights of recovery it might have to the insurer. It is unclear from the present record, however, whether an appropriate instrument has in fact, been executed. It is therefore impossible for us to determine whether Bison Ford is pursuing the indemnification claim on its own behalf or on behalf of its insurer, under CPLR 1004." Id.

CPLR 1004 provides an exception to the real party in interest rule and addresses when joinder of a real party in interest is unnecessary, and provides that an "insured person who has executed to his insurer either a loan or subrogation receipt, trust agreement, or other similar agreement . . . may sue or be sued without joining with him the person for or against whose interest the action is brought." N.Y. C.P.L.R. § 1004. CPLR 1004 allows an insurer to sue in the name of the insured when the insured has executed "a loan or subrogation receipt, trust agreement, or other similar agreement." Austin Powder Co., 502 N.E. 2d at 985 n. 3.

"Subrogation, an equitable doctrine, entitles an insurer to 'stand in the shoes' of its insured to seek indemnification from third parties whose wrongdoing has caused a loss for which the insurer is bound to reimburse." North Star Reinsurance Corp. v. Continental Ins. Co., 624 N.E. 2d 647, 653 (N.Y. 1993). "Subrogation allocates responsibility for the loss to the person who in equity and good conscience ought to pay it, in the interest of avoiding absolution of a wrongdoer from liability simply because the insured had the foresight to procure insurance coverage. The right arises by operation of law when the insurer makes payment to the insured. Id. (citations omitted).

In Faraino, the court held that where an insured provided its insurer with a loan receipt after the insurer made full payment for the loss minus the deductible provided in the policy, and the insurer subsequently determined not to pursue subrogation rights, the court held that the insured was not barred from pursuing his claims against the alleged tortfeasor. Faraino v. Centennial Ins. Co., 103 A.D.2d 790, 791 (N.Y. App. Div. 1984). In Faraino, after the insurer paid for the loss and the plaintiff executed a loan receipt granting the insurer subrogation rights, the insurer chose not to pursue a subrogation action. Id. The plaintiff filed an action against the insurer for breach of the covenant of good faith for failing to subrogate to protect the plaintiff's interests concerning not only the value of the boat as covered by the insurance policy but also personal property damage of $30,000 based on the alleged negligence of the alleged tortfeasor. Id. The court reversed the trial court's denial of summary judgment. Id. The court explained that the loan receipt "is not a banking or financial operation but a device for the payment absolute of an insurance loss, coupled with a fictional implementation to permit the insurer to sue in the name of the insured." Id. (citation omitted). "This fiction enables the insurer to bring an action against the alleged tort-feasor to enable it to recover the amount it has paid to the insured" but does not require it. Id. Once the insurer "opted to forgo suit, the 'loan' was deemed to be final payment under the policy." Id. Therefore, the insured was permitted to pursue his claims against the alleged tort-feasor. While Faraino involved an insurer's payment of a portion of the insured's claim for loss, the principles announced are applicable in this case.

In this case, the parties do not dispute that RLC did not actually incur any Losses and instead its insurer CNA paid them. Under New York law, CPLR 1004 authorizes suit in the name of an injured person, in this case RLC or Plaintiff as its assignee, who has executed to his insurer "either a loan or subrogation receipt, trust agreement, or other similar agreement." See N.Y. C.P.L.R. § 1004. The parties do not dispute that RLC or Plaintiff, as its assignee, does not have standing to pursue the

action unless RLC demonstrates appropriate documentation showing RLC's right to pursue a claim on behalf of its insurer. Defendants argue that Plaintiff has not met his burden of proof by presenting any admissible evidence demonstrating an assignment of the right to recover amounts paid by CNA.

However, contrary to Schwab Defendants' assertion, CPLR 1004 does not require a legal "assignment" of the right of subrogation but only a loan or subrogation receipt or other similar agreement which New York courts have described as merely a fictional implementation to permit the insurer to sue in the name of the insured. See Faraino, 103 A.D. 2d at 791 (citing Herbert Rosenthal Jewelry Corp. v. St. Paul Fire & Marine Ins. Co., 21 A.D. 2d 160, 164 (1964)); see also Feeter v. Van Scot Bros., Inc., 74 Misc. 2d 388, 390 (N.Y. Sup. Ct. 1973) (issue of whether a particular transaction is "in law payment or loan" is less important now that the CPLR 1004 allows for an execution of a loan or subrogation receipt or similar instrument). Plaintiff argues that the APA and the Settlement Agreement are "other similar agreements" demonstrating that Plaintiff, as RLC's assignee, is allowed to pursue the indemnification claim.

The indemnification clause of Article X of the APA covers any losses, including attorney's fees incurred by RLC or its assigns. (Dkt. No. 316-4, Weitz Decl., Ex. 12, APA ¶ 10.1.) The Settlement Agreement and Release of All Claims entered into between Ralph Lauren Defendants and Plaintiff includes a release that identifies CNA, as a releasee. (Dkt. No. 329-2, Szeto Decl., Ex. 2.) Although CNA was not a signatory to the Settlement Agreement, it, as the insurer who authorized and paid the settlement amount, was involved in the approval of the settlement agreement. (Dkt. No. 329-4, Szeto Decl., Ex. 3, Kawabata Decl. ¶¶ 4, 5.) CNA approved and accepted the terms of the settlement agreement and authorized the final settlement amount and the assignment of any and all indemnification and contribution rights to Plaintiff. (Id. ¶ 5.) As part of the settlement negotiations or agreement. CNA did not expressly reserve any subrogation rights. (Id. ¶ 4.)

Here, the collective evidence, including the APA, the settlement agreement and Kawabata's declaration, provides sufficient support that CNA has forfeited its subrogation rights and by being a releasee in the settlement agreement impliedly acknowledged that Plaintiff, as RLC's assignee, may proceed on CNA's subrogation rights under the APA. See Herbert Rosenthal Jewelry Corp., 21 A.D. 2d at 164 (looking to four documents-the loan receipt, insurance policy, proof of claim and draft endorsement-to determine purpose and effect of the transaction which was for the insurer to pay the loss, the insured receive the proceeds of the insurance promptly, and for the insurer to be subrogated to the third party claim to be prosecuted at its expense.)

The cases cited in the Court's prior order highlight New York courts' concern that the losing party may benefit from the other party's insurer's payment of its legal costs or losses that the losing party was contractually obligated to pay. CPLR 1004 provides the mechanism for an insured to sue on behalf of its insurer. In this case, where it is apparent that CNA has forfeited its right to subrogation against Schwab Defendants in favor of Plaintiff, as assignee of its insured, the Court maintains its conclusion that Plaintiff is entitled to $478,028.40 representing RLC's losses incurred under the APA.

Third Party Defendants also argue that equity favors granting their motion because otherwise RLC will be in a far better position than if Schwab had performed under the APA because its defense and settlement costs have been paid by another party. The Court does not find Schwab Defendants' equitable argument convincing. On the flip side, if the Court grants their motion to reconsider, Defendants will escape their obligation under the APA to pay RLC's defense and settlements costs. Defendants' equitable argument is not convincing.

////

////

////

////

**Conclusion**

Based on the above, the Court DENIES Third Party Defendants' motion for reconsideration. The hearing set for June 28, 2018 shall be **vacated**.

IT IS SO ORDERED.

Dated: June 26, 2018

Hon. Gonzalo P. Curiel
United States District Judge